IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

CHRISTOPHER BAILEY,

    Plaintiff,

    v.    Civil Action No. AW-10-3395

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY,

    Defendant.

## MEMORANDUM OPINION

Plaintiff Christopher Bailey brings this action against Defendant Washington Metropolitan Area Transit Authority. Bailey asserts a negligence claim arising out of a traffic incident on a WMATA Metrobus. Currently pending before the Court is Defendant's Motion for Summary Judgment. The Court has reviewed the entire record, as well as the pleadings and exhibits, and finds that no hearing is necessary. Local R. 105.6 (D. Md. 2011). For the reasons that follow, the Court **GRANTS** Defendant's Motion for Summary Judgment.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

On April 19, 2010, Plaintiff Christopher Bailey ("Bailey") boarded Defendant Washington Metropolitan Area Transit Authority's ("WMATA") Metrobus at the intersection of University Boulevard and Colesville Road in Silver Spring, Maryland. Bailey boarded the bus, paid the fare with his Smartrip card, and then walked towards the rear of the bus as it departed from the service stop. Shortly after the bus departed, a vehicle suddenly pulled in front of the bus from the lane to the bus's left, thereby cutting the bus off. The bus driver avoided colliding

1

with a phantom vehicle by breaking abruptly.[1] Due to the abrupt stop, Bailey lost his balance as he walked up the bus's rear steps, falling and hitting the bus's back door. The bus operator, Patricia Trammel, informed Bailey that she had to break abruptly to avoid hitting the phantom vehicle. Neither the Plaintiff nor any witnesses on the bus alleges to have observed the driver's reaction or any other circumstances surrounding Trammel's sudden braking.

On October 7, 2010, Bailey filed this suit in the District Court of Maryland sitting in Prince George's County against WMATA for injuries sustained as a result of the Metrobus operator's sudden stop. On December 3, 2010, WMATA removed the case to this Court. Following the close of discovery, WMATA filed its Motion for Summary Judgment.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate only "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A disputed fact presents a genuine issue "if the evidence is such that a reasonable jury could return

---

[1] A phantom vehicle is a vehicle in which the identity of the motor vehicle and of its driver and owner cannot be established. Maryland courts consistently utilize this term to describe such vehicles. *See, e.g. Comm'r of Motor Vehicles v. Balt. & Annapolis R.R. Co.*, 263 A.2d 592, 596 (1970).

a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Material disputes are those which "might affect the outcome of the suit under the governing law." *Id.*

Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, a party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *See Beal v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Further, if a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Finally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Firefighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

## III.  LEGAL ANALYSIS

In Maryland, to establish a prima facie case of negligence, a plaintiff must prove "'(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of duty.'" *WMATA v. Seymour*, 874 A.2d 973, 976–77 (Md. 2005) (citing *Balt. Gas Elec. v. Lane*, 656 A.2d 307, 311 (Md. 1995) (citations omitted)). Duty is defined as "'an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another.'" *Todd v. Mass Transit Admin.*, 816 A.2d 930, 933 (Md. 2003) (quoting *Muthukumarana v. Montgomery County.*, 805 A.2d 372, 395 (Md. 2002) (citations omitted)).

Maryland courts hold common carriers to a higher standard of care for operating modes of transportation, such as buses, taxis, or railroads. *See Todd*, 816 A.2d at 934. While common

3

carriers are held to this higher standard of care, carriers are not "insurer[s] of [the] safety of its passengers but "'only bound to employ the utmost care and diligence which human foresight can use.'" *Smith v. Baltimore Transit Co.*, 128 A.2d 413, 417 (Md. 1957) (quoting *City Pass. Ry. Co. v. Nugent*, 38 A. 779, 781 (Md. 1897)). The key inquiry in cases where a passenger sues a common carrier for negligence is to determine whether, under this higher duty of care, the action of the common carrier that led to the injury was negligent under the circumstances. *Seymour*, 874 A.2d at 977. The plaintiff bears the burden of proving that a common carrier's sudden stop was negligent under the circumstances. *See id.* at 977–78. A plaintiff cannot satisfy this burden merely by adducing evidence that the common carrier stopped suddenly. *See id.* Rather, the plaintiff must present a "'definite, factual incident' created by the stop which shows it to be so abnormal and extraordinary that it can be legally found to have constituted negligence in operation.'" *Id.* at 978 (quoting *Comm'r of Motor Vehicles v. Baltimore & Annapolis R.R. Co.*, 263 A.2d 592, 594 (Md. 1970)).

Mere "'adjectival descriptions of the nature of the stop'" are insufficient to create a definite factual incident showing the stop to be abnormal or extraordinary. *Id.* The Court of Appeals of Maryland has considered whether a common carrier acts negligently for suddenly breaking to avoid colliding with a phantom vehicle. *See Comm'r of Motor Vehicles*, 263 A.2d at 594–97. In *Commissioner of Motor Vehicles*, the plaintiff sued the owner and driver of a bus for negligence arising out of an incident in which the driver suddenly stopped and the plaintiff subsequently fell. *Id.* at 593. In *Commissioner*, the plaintiff was walking from the front to the rear of the bus as the driver drove. *See id.* at 593–94. Out of nowhere, a "car sharply cut in front of the bus from the left." *Id.* at 594. The driver slammed on the breaks to avoid hitting the phantom vehicle. *Id.*

On these essential facts, the trial court directed a verdict in favor of the owner and bus driver, and the plaintiff appealed. *See id.* at 593–94. The *Commissioner* court upheld the trial court's decision to direct verdicts for the owner and bus driver. *Id.* at 594. The Court noted that the plaintiff's evidence largely consisted of adjectival descriptions. *See id.* at 595. For instance, the bus driver characterized the stop as "quick" and "dynamite." *Id.* Likewise, the plaintiff testified that the driver "slammed his brakes." *Id.* The *Commissioner* court held these adjectival descriptions inadequate to create a definite factual incident that the driver's sudden stop was abnormal or extraordinary. *Id.*

The *Commissioner* court rested its holding on alternative grounds. First, the Court held that other circumstances would preclude an inference of negligence on the part of the owner and bus driver even if the preceding adjectival descriptions sufficed to create a definite factual incident. *See id.* at 595. For "[r]easonable minds would not disagree that a driver who is confronted with the sudden appearance of another vehicle directly in front of him as a reasonably prudent man by stopping as quickly as possible." *Id.* Second, the Court held that the actions of the phantom vehicle, not the alleged negligence of bus driver, proximately caused the plaintiff's injuries. *Id.* at 596.

The facts in this case are virtually indistinguishable from the facts in *Commissioner*. In this case, like in *Commissioner*, the plaintiff was walking toward the rear of the bus as the driver conducted the bus. Just like the bus driver in *Commissioner*, the WMATA bus driver suddenly braked to avoid colliding with a phantom vehicle. Furthermore, as with the plaintiff in *Commissioner*, Bailey's evidence consists of little more than adjectival descriptions that "[t]he bus came to an abrupt stop." (Doc. 11, Ex. 2, at 9). But, as *Commissioner* teaches, such

5

adjectival descriptions fail to create a definite factual incident that the driver's sudden stop was abnormal or extraordinary. *Id.*

Besides, as in *Commissioner*, the undisputed facts show that the WMATA driver abruptly braked to avoid hitting the phantom vehicle. Indeed, Bailey states that he knows of no other circumstances that would have caused the bus driver to stop suddenly. (Doc. 11, Ex. 2, at 12). Thus, even if Bailey's adjectival descriptions constituted a definite factual incident, a reasonable juror could only conclude that the WMATA driver acted as a reasonably prudent person in suddenly stopping. Likewise, a reasonable juror could only conclude that the actions of the phantom vehicle proximately caused Bailey's injuries.

Bailey's sole counterargument is unpersuasive. Bailey argues that the WMATA bus driver acted negligently because she suddenly stopped as Bailey was walking up stairs in the back of the bus. (Doc. 13, at 7–8.) But this observation does not change the fact that Trammel braked sharply to avoid an oncoming car. Moreover, it is well-established in Maryland that a common carrier may depart from a service stop before passengers seat themselves. *See, e.g., Przyborowski v. Balt. Transit Co.*, 59 A.2d 687, 688–89 (Md. 1948). An exception to this rule is when a passenger clearly has a disability or infirmity. *WMATA v. Djan*, 979 A.2d 194, 197 (Md. Ct. Spec. App. 2009) (citing *Mass Transit v. Miller*, 315 A.2d 772, 775 (Md. 1974)). Here, however, Bailey adduces no evidence showing that he is disabled or infirm.

The preceding analysis shows that the material facts are not in dispute and that the Plaintiff has failed to proffer any legally sufficient evidence on which a reasonable juror could conclude that WMATA acted negligently. Accordingly, the Court grants the Defendant's Motion for Summary Judgment.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment. A separate Order will follow.

| October 14, 2011 | /s/ |
|---|---|
| Date | Alexander Williams, Jr.<br>United States District Judge |